UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOSEPH B.,[1] | |
| Petitioner, | Case No. 1:21-CV-00361-DKG |
| v. | **MEMORANDUM DECISION AND ORDER** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration,[2] | |
| Respondent. | |

## INTRODUCTION

Pending before the Court for consideration is Joseph B.'s Petition for Review of the Respondent's denial of social security benefits, filed on September 9, 2021. (Dkt. 1). The Court has reviewed the Petition for Review, the parties' memoranda, and the administrative record ("AR"). For the reasons that follow, the Court will affirm the final decision of the Commissioner of Social Security ("Commissioner").

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Kilolo Kijakazi is substituted for Andrew Saul pursuant to Federal Rule of Civil Procedure 25(d). Kijakazi became the Acting Commissioner of Social Security Administration on July 9, 2021.

**MEMORANDUM DECISION AND ORDER – 1**

## BACKGROUND

On November 18, 2018, Petitioner proactively filed an application for Title II benefits for a period of disability beginning August 18, 2018, based upon physical and mental impairments including a broken neck at C1, C6 and C7, traumatic brain injury, broken collarbone, partially collapsed lung, lacerated spleen, lacerated kidney, memory issues, post-traumatic stress disorder ("PTSD"), and neuropathy of the right hand. A hearing was held on June 24, 2020, before an Administrative Law Judge ("ALJ"), Judge Stephen Marchioro. After considering testimony from Petitioner, Petitioner's mother, and a vocational expert, ALJ issued a decision on October 23, 2020, finding that Petitioner was not disabled.

Petitioner requested review by the Social Security Appeals Counsel, which denied his request for review in a notice dated July 11, 2021, making the ALJ's decision the final decision of the Commissioner. (AR 1-6). Petitioner timely appealed this final decision on September 9, 2021. (Dkt. 1).

The Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).[3] The alleged disability onset date was August 18, 2018. Petitioner

---

[3] This statute also governs venue in Social Security appeals. It provides:
  Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia.
Thus, for venue to be proper, Petitioner must either reside or have his principal place of business in the District of Idaho. Here, Petitioner resides in Ontario, Oregon. (Dkt. 1 at 1).
  Venue, however, is "not a qualification upon the power of the court to adjudicate, but a limitation designed for the convenience of the litigants, and, as such, may be waived by them." *Olberding v. Ill. Cent. R. Co.*, 346 U.S. 338, 340 (1953). Consistent with this rule, the United
(Continued)

**MEMORANDUM DECISION AND ORDER – 2**

was twenty-nine years of age at the time of the alleged disability onset. Petitioner has at

least a high school education and has worked primarily as a ranch hand and rodeo

performer. (AR 30).

## THE ALJ'S DECISION[4]

Disability is the "inability to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of

not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step

sequential inquiry to determine whether a claimant is disabled within the meaning of the

Act. 20 C.F.R. § 404.1520; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006)

---

States Supreme Court has indicated that venue under § 405(g) is "waivable by the parties...."
*Weinberger v. Salfi*, 422 U.S. 749, 764 (1975). Thus, a party must raise the issue of improper
venue in a Rule 12(b) motion or a responsive pleading; otherwise, it waives the opportunity to do
so. Fed. R. Civ. P. 12(g), (h); *see also* 28 U.S.C. § 1406(b) ("Nothing in this chapter shall impair
the jurisdiction of a district court of any matter involving a party who does not interpose timely
and sufficient objection to the venue.").

Here, given Petitioner's Oregon residency, the time to contest venue came and went without
objection from Respondent, and Respondent's memorandum opposing the Petition for Review
does not mention venue. (Dkt. 16). Accordingly, Respondent has waived the defense of improper
venue, and the Court will decide this appeal on the merits.

[4] *Kennedy v. Colvin*, 738 F.3d 1172 (9th Cir. 2013), sets forth the five-step review
process as follows:

> The five-step process for disability determinations begins, at the first and second
> steps, by asking whether a claimant is engaged in 'substantial gainful activity' and
> considering the severity of the claimant's impairments. *See* 20 C.F.R. §
> 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step
> asks whether the claimant's impairment or combination of impairments meets or
> equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration
> requirement. *See id*. § 416.920(a)(4)(iii). If so, the claimant is considered disabled
> and benefits are awarded, ending the inquiry. *See id*. If the process continues
> beyond the third step, the fourth and fifth steps consider the claimant's 'residual
> functional capacity' in determining whether the claimant can still do past relevant
> work or make an adjustment to other work. *See id*. § 416.920(a)(4)(iv)-(v).

738 F.3d at 1175.

**MEMORANDUM DECISION AND ORDER – 3**

(discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ determined that Petitioner had not engaged in substantial gainful activity since August 18, 2018, Petitioner's alleged onset date. (AR 15). At step two, the ALJ determined that Petitioner had the following severe impairments: traumatic brain injury, PTSD, lacerated kidney and spleen, fractured neck, fractured collarbone, left rib fracture, right hand neuropathy, and obesity. (AR 16). At step three, the ALJ found that Petitioner did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 CFR Part 404, Subpt. P, App. 1. (AR 16). Between steps three and four, the ALJ determined Petitioner's residual functional capacity ("RFC") as the ability to perform

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl. The claimant can never climb ladders, ropes, or scaffolds. The claimant can reach overhead with the right upper extremity frequently. The claimant must avoid all exposure to vibration and all exposure to unguarded moving mechanical parts such as table saws, band saws, or exposed mechanical gears and all exposure to unprotected heights. The claimant is limited to work that has no more than a moderate noise level as defined by the Selected Characteristics of Occupations ("SCO"). The claimant is limited to work that consists of simple, routine tasks. The claimant can tolerate work that has no more than simple work related decision making as part of the job. The claimant can tolerate no more than occasional changes in the work setting. The claimant is limited to work that requires no more than occasional use of public transportation or travel to unfamiliar places. The claimant is limited to no more than occasional interaction with the public and coworkers.

(AR 19).

At step four, the ALJ determined Petitioner was unable to perform any past relevant work. (AR 30). At step five, the ALJ relied on the Vocational Expert's ("VE")

**MEMORANDUM DECISION AND ORDER – 4**

testimony when he determined that Petitioner could adjust to other work in the national economy, and therefore, was not disabled. (AR 31-32).

## ISSUES FOR REVIEW

The following issues are raised on appeal:

1.    Whether the ALJ reasonably evaluated Petitioner's subjective symptom testimony.

2.    Whether the ALJ reasonably evaluated the medical opinion evidence.

3.    Whether the ALJ properly considered the lay witness testimony.

4.    Whether the ALJ's Residual Functional Capacity assessment is supported by substantial evidence.

## STANDARD OF REVIEW

On review, the Court is instructed to uphold the final decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

In making its determination, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that does not support

**MEMORANDUM DECISION AND ORDER – 5**

the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court considers only the reasoning and actual findings identified by the ALJ and may not affirm for a different reason or based on post hoc rationalizations attempting to infer what the ALJ may have concluded. *Garrison*, 759 F.3d at 1010; *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports Petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

**MEMORANDUM DECISION AND ORDER – 6**

# DISCUSSION

## 1. Subjective Symptom Testimony

Petitioner challenges the ALJ's evaluation of his subjective symptom testimony, arguing that the ALJ erred by disregarding his statements without providing clear and convincing reasons for doing so. (Dkt. 12 at 13). Respondent contends that the ALJ reasonably found that Petitioner's allegations about the limiting effects of his symptoms were inconsistent with the evidence. (Dkt. 16 at 3).

### a. Legal Standard

The ALJ engages in a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Garrison*, 759 F.3d at 1014-15; 20 C.F.R. § 404.1529 (Mar. 27, 2017)). When doing so, "the claimant need not show that [his or] her impairment could reasonably be expected to cause the severity of the symptom [he or] she has alleged; [he or] she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ may discredit the claimant's testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. *Trevizo*, 871 F.3d at 678; *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). It is "not sufficient

**MEMORANDUM DECISION AND ORDER – 7**

for the ALJ to make only general findings; he [or she] must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). These reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

When evaluating the intensity and persistence of symptoms, the Commissioner requires that the ALJ consider all the evidence in the record. *See* SSR 16-3p (March 16, 2016), 2016 WL 1119029 at *1-2.[5] The ALJ is directed to examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *4.

In addition, the Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other

---

[5] The Commissioner superseded SSR 96-7p governing the assessment of a claimant's "credibility" with SSR 16-3p, which eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to evaluate the record as a whole. *Trevizo*, 871 F.3d at 679 n.5.

MEMORANDUM DECISION AND ORDER – 8

information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id*. at \*6-7.

### b.  Analysis

The ALJ considered Petitioner's testimony regarding his ability to understand, remember or apply information; (AR 18) (difficulty remembering generally, understanding what is said to him, following instructions, completing tasks, paying bills, and going to doctor's appointments and taking medications without reminders), his ability to interact with others; (AR 18) (difficulty engaging in social activities and spending time in crowds but able to spend time with friends and family), and his ability to concentrate, persist, or maintain pace, (AR 18) (limitations in concentrating generally, focusing generally, following instructions, completing tasks, and avoiding distractions but able to prepare meals and watch television).

The ALJ also considered the objective medical evidence, describing the multiple injuries Petitioner sustained as a result of his August 2018 ATV accident, as well as the treatment essential to Petitioner's recovery. (AR 21). The ALJ paid particular attention to Petitioner's mental status examinations ("MSE"), noting the results of each MSE from September 2018 through December 2019, as well as the results of Dr. Gage's December 2019 neuropsychological evaluation. (AR 18-19, 21-24). The ALJ also considered Petitioner's own statements about his symptoms, as relayed to therapists and medical examiners. (AR 18, 23-24). And finally, the ALJ considered statements of Petitioner's

**MEMORANDUM DECISION AND ORDER – 9**

family members about Petitioner's ongoing symptoms, mental impairment, and ability to manage himself. (AR 18, 20-21, 24-25).

The ALJ concluded that while Petitioner's medically determinable impairment could reasonably be expected to cause the alleged symptoms, Petitioner's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 25).

The ALJ gave two reasons for rejecting Petitioner's testimony. (AR 25-26). First, the ALJ found Petitioner's allegations were not entirely consistent with the medical evidence.[6] (AR 25-26). And second, the ALJ found Petitioner's activities indicated his judgment impairment "was not as severe as alleged." (AR 26). The Court will consider each of the ALJ's reasons in turn.

### i. Inconsistent with the Medical Evidence

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can be "specific and substantial reasons that undermine ... credibility." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). While a claimant's "testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v.*

---

[6] The ALJ evaluated Petitioner's subjective symptom testimony with respect to both his physical and mental impairments. Because Petitioner does not contest the ALJ's evaluation of Petitioner's testimony related to his physical impairments, the Court will only consider the ALJ's evaluation of Petitioner's testimony related to his mental impairments.

*Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider.").

As to Petitioner's mental impairments, the ALJ determined that Petitioner's symptom testimony was inconsistent with both the medical evidence and other evidence. (AR 25-26). Specifically, the ALJ noted that Petitioner's December 2019 neuropsychological function tests showed Petitioner exhibited normal reasoning and executive function with low average to normal memory, no difficulty with cognitive shifting, and fine motor dexterity and processing speed. (AR 25). Next, the ALJ contrasted Petitioner's family's reports that Petitioner exhibited anxiety with some significant deficits in judgment, his ability to recognize that he had not completed tasks adequately, and poor impulse control and judgment with evidence that Petitioner's MSEs returned to normal function with abnormal findings in insight and judgment. (AR 26). Finally, the ALJ considered Petitioner's ability to wean off pain medications, specifically his headache medication, by February 2020. (AR 26).

The Court finds there is substantial evidence to support the ALJ's first reason for discrediting Petitioner's testimony. The ALJ's detailed analysis of the medical record and Petitioner's subjective symptom testimony spans several pages immediately preceding his conclusion and contains numerous citations to the record as well as a detailed summary of the medical records analyzed to formulate his conclusion. (AR 18) (discussing Petitioner's subjective symptom testimony with respect to his ability to understand, remember, or apply information and the results of each of his mental status

**MEMORANDUM DECISION AND ORDER – 11**

examinations); (AR 20-21) (discussing Petitioner's subjective symptom testimony and lay witness testimony pertaining to Petitioner's mental impairments); (AR 21-25) (describing Petitioner's treatment records from 2018 to 2020). The ALJ's discussion of such evidence is sufficient to permit the Court to determine that the ALJ did not arbitrarily discredit Petitioner's testimony.

While the Court agrees with Petitioner that the ALJ did not cite to the administrative record when stating his conclusion, (Dkt. 12 at 14), the Court is able to discern the ALJ's path when it considers the ALJ's decision as a whole. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("Even when an agency 'explains its decision with "less than ideal clarity,"' we must uphold it 'if the agency's path may reasonably be discerned.'" (quoting *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004)).

To the extent the evidence could be interpreted differently, or there are conflicts or ambiguities in the evidence, those matters are resolved by the ALJ. *Morgan.*, 169 F.3d at 599-600. The Court must uphold the ALJ's conclusion where, as here, the evidence is subject to more than one rational interpretation and the ALJ's decision is supported by substantial evidence. *Burch*, 400 F.3d at 679.

### ii.  Daily Activities

The second reason the ALJ gave for disregarding Petitioner's subjective symptom testimony was that Petitioner's activities did not demonstrate that his judgment impairment was as severe as alleged. (AR 26). Specifically, the ALJ found that Petitioner's return to full time work at the ranch and indication he was "back on track"

**MEMORANDUM DECISION AND ORDER – 12**

going to the gym, riding horses, training for cattle roping competitions, and caring for his animals indicated that his judgment impairment "was not as severe as alleged." (AR 26). Further, the ALJ considered Petitioner's ability to perform complex tasks and skills, noting that while both medical records and reports from friends and family indicated that Petitioner exhibited difficulty performing complex or multiple tasks, Petitioner was "able to return to activities that required some skill and physical abilities" including target shooting, cattle roping, riding horses, and mending fences. (AR 26).

The Court finds that there is substantial evidence to support the ALJ's conclusion that Petitioner's judgment impairment "was not as severe as alleged" based upon the activities Petitioner was able to engage in. While the ALJ recognized that the evidence did indicate Petitioner suffered from judgment impairment, (AR 26), the ALJ found that each of the activities Petitioner engaged in required him to exercise a degree of judgment that was inconsistent with Petitioner's own testimony. Substantial evidence supports this finding. (AR 70-71) (Petitioner testified, "A lot of times, I'll go out and I fix fence, and that's something I can do by myself," and that he "usually walk[s] the fence line and determines which area of fence needs to be fixed when he "see[s] the neighbor's cow will probably be in there and then you'll go kind of in that area."); (AR 54-56) (Petitioner engaged in "groundwork" and "actually got in shape … a little better shape" and his "good horse was working really good" in preparation for the August 2019 cattle roping competition); (AR 51) (Petitioner has two horses that he "maintain[s]"); (AR 56-57) (Petitioner went to Vikings Gym to workout with a friend and his kids in preparation for the roping competition and exchanged roping lessons for training sessions in the gym).

**MEMORANDUM DECISION AND ORDER – 13**

Additionally, the ALJ properly considered Petitioner's ability to perform complex tasks and skills, noting that while both medical records and reports from friends and family indicated that Petitioner exhibited difficulty performing complex or multiple tasks, Petitioner was "able to return to activities that required some skill and physical abilities" including target shooting, cattle roping, riding horses, and mending fences. (AR 26). Petitioner takes issue with the ALJ's discussion of this evidence, asserting that the ALJ was required to analyze "how these activities could transfer to full time competitive employment" as well as "how often or how successfully Petitioner performed these activities." (Dkt. 12 at 15). However, this was not required. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (noting that there are "two grounds for using daily activities" to discount a claimant's testimony: either (1) that the activities "contradict [the claimant's] other testimony" or (2) that they "meet the threshold for transferrable work skills").

Evidence of an active lifestyle can undermine a disability claimant's credibility, *Bray*, 554 F.3d at 1226-27, and daily activities that are inconsistent with alleged symptoms are a relevant credibility consideration, *Rollins*, 261 F.3d at 857. Here, the ALJ identified an inconsistency between the medical and other evidence suggesting Petitioner was unable to perform complex or multiple tasks, and Petitioner's testimony which, to the ALJ, suggested Petitioner utilized "some skills and physical abilities" when he engaged in certain activities. (AR 26). Again, substantial evidence supports the ALJ's conclusion. (AR 487) (Petitioner practiced roping and reported he was "really happy with his balance"); (AR 506) (Petitioner had "worked through the process of initial planning for starting a business for cattle roping competitions" as early as December 2018); (AR

**MEMORANDUM DECISION AND ORDER – 14**

907) (Petitioner's coping mechanisms included riding horses and sport shooting); (AR 617, 619) (Petitioner was back to riding horses and roping live cattle); (AR 605-07) (Petitioner assisted his friends with cutting and placing fencing); (AR 625) (Petitioner was riding horses and lifting hay bales without pain or soreness afterward); (AR 70-71) (explaining his process of mending fences, Petitioner testified, "A lot of times, I'll go out and I fix fence, and that's something I can do by myself," and that he "usually walk[s]" the fence line and determines which area of fence needs to be fixed when he "see[s] the neighbor's cow will probably be in there and then you'll go kind of in that area.").

Consistent with this finding, the ALJ determined that Petitioner was unable to perform his past relevant work as a ranch hand (semi-skilled) or rodeo performer (skilled), (AR 30), and incorporated many of Petitioner's mental impairments into his RFC assessment, (AR 19) (limiting Petitioner to "work that has no more than a moderate noise level," "work that consists of simple, routine tasks," "no more than simple work related decision making as part of the job," "no more than occasional changes in the work setting," and "no more than occasional interaction with the public and coworkers").

On this record, the Court finds the ALJ gave clear and convincing reasons for discounting Petitioner's subjective symptom testimony that are supported by substantial evidence. To the extent the evidence could be interpreted differently, or there are conflicts or ambiguities in the evidence, those matters are resolved by the ALJ. *Morgan.*, 169 F.3d at 599-600. The Court must uphold the ALJ's conclusion where, as here, the evidence is subject to more than one rational interpretation and the ALJ's decision is supported by substantial evidence. *Burch*, 400 F.3d at 679. Accordingly, the ALJ did not

**MEMORANDUM DECISION AND ORDER – 15**

err in disregarding Petitioner's subjective symptom testimony.

## 2. Medical Opinion

Petitioner asserts that the ALJ erred in his analysis of the medical opinions by (1) providing "only broad citations to the record … without providing any analysis of the opinions with[in] the medical record," with respect to the two state agency medical consultants, Susan South, Psy.D., and Sergiy Barsukov, Psy.D.;[7] and (2) providing no discussion regarding the consistency or supportability factors with respect to the opinion of Jason D. Gage, Ph.D. (Dkt. 12 at 7, 10). Respondent argues that the ALJ reasonably considered Dr. Gage's statement and correctly concluded that Dr. Gage did not offer a medical opinion regarding Petitioner's functioning. (Dkt. 16 at 11).

### a. Legal Standard

New regulations governing an ALJ's evaluation of medical opinion evidence apply to claims filed on or after March 27, 2017. *See* Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. Under the new regulations, the ALJ is no longer required to give deference to any medical opinion, including treating source opinions. *Id.*; *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Instead, the ALJ evaluates the persuasiveness of the

---

[7] The ALJ considered the state agency medical consultants' opinions with respect to Petitioner's residual mental functional capacity and residual physical functional capacity. While Petitioner asserts that "the ALJ provided only broad citations to the record … without providing any analysis of the opinions with the medical record," (Dkt. 12 at 7), it appears that Petitioner's objection to the ALJ's analysis of these opinions pertains only to Petitioner's mental functional capacity. For this reason, the Court will limit its analysis to the ALJ's discussion of the state agency medical consultants' consideration of the same.

opinions based on several factors. 20 C.F.R. § 404.1520c(a). These are: supportability, consistency, relationship to the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors in this evaluation process are supportability and consistency.[8] 20 C.F.R. § 404.1520c(b)(2).

"Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'" *Woods*, 32 F.4th at 791-792 (quoting 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent ... with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* (quoting 20 C.F.R. § 404.1520c(c)(2)).

Under this framework, the ALJ is required to articulate how persuasive they find the evidence and explain how supportability and consistency were considered. 20 C.F.R § 404.1520c(b)(2). The ALJ may, but is not required to, explain how the other secondary factors were considered, unless he or she finds that two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same." 20 C.F.R. § 404.1520c(b)(3). The ALJ's persuasiveness determination under the revised regulations must be supported by substantial evidence. *See Woods*, 32 F.4th at 787 ("Now, an ALJ's decision, including

---

[8] "Supportability" is defined as: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency" is defined as: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

the decision to discredit any medical opinion, must simply be supported by substantial evidence.").

### b. The ALJ's Decision

The ALJ considered the medical opinions of state agency medical consultants Drs. South and Barsukov and found their assessment of Petitioner's mental impairments as "severe" to be "somewhat inconsistent." (AR 26). Specifically, the ALJ noted that while Drs. South and Barsukov assessed Petitioner as having severe mental impairments, they found moderate impairments or limitations in Petitioner's cognitive functioning, including his ability to understand, remember and apply information; his ability to carry out detailed instructions and maintain concentration for extended periods; his ability to respond to changes, be aware of hazards, use public transportation, and set realistic goals; and his ability to concentrate, persist or maintain pace and adapt or manage himself. (AR 26). Ultimately, the ALJ found the state agency medical consultants' opinions to be well supported by the medical and objective evidence, which showed continued deficits and abnormal mental status examinations, and consistent with the longitudinal medical and objective evidence, including Petitioner's return to activities and work tasks as well as statements made by friends and family pertaining to Petitioner's ability to complete complex tasks. (AR 26-27).

The ALJ also considered Dr. Gage's opinion letter dated June 11, 2020, in which Dr. Gage opined that it was more likely that Petitioner would not have been able to maintain solid employment without assistance from family "until recently." (AR 28). After determining that Dr. Gage's opinion letter was "somewhat vague," the ALJ noted

**MEMORANDUM DECISION AND ORDER – 18**

that Dr. Gage considered Petitioner's risk of relapse of alcohol consumption to be

significant to his assessment. (AR 28). The ALJ ultimately found Dr. Gage's opinion

letter "unpersuasive with respect to the assessment of the claimant's residual functional

capacity" because "Dr. Gage did not provide any opinion regarding specific functional

limitations of the claimant nor did he specify the functional limitations associated with

the claimant's noted anxiety and irritability." (AR 28).

The ALJ proceeded to discuss the results of Dr. Gage's December 2019

neuropsychological testing and other treatment notes pertaining to Petitioner's PTSD

symptoms as well as Petitioner's cognitive impairment relating to his traumatic brain

injury. (AR 28). The ALJ then considered Dr. Gage's treatment records throughout the

rest of his decision, finding on multiple occasions that other physicians' opinions were

"not persuasive" insofar as they were "inconsistent" with Dr. Gage's treatment records

and evaluations. (AR 28-29) (finding Dr. Christenson's opinion "not persuasive" and

"inconsistent with the treatment records of the claimant's neurologist, Dr. Gage"); (AR

29) (finding Dr. Hazlett's opinions "not persuasive … to the extent they were not

consistent with the longitudinal and medical evidence, including the subsequent

evaluations by Dr. Gage").

### c. Analysis

#### i. State Agency Medical Consultants

Having thoroughly reviewed the state agency medical consultants' assessment of

the medical records pertaining to Petitioner's mental impairments, the Court concludes

that there is substantial evidence to support the ALJ's finding that these opinions were

**MEMORANDUM DECISION AND ORDER – 19**

persuasive. Petitioner takes issue with the ALJ's analysis of the state agency consultants' medical opinions, asserting that the ALJ "provided broad citations to the record without providing any analysis of the opinions with the medical record." (Dkt. 12 at 7). While the ALJ did provide broad citations to the medical record when discussing the persuasiveness factors, (AR 27) ("See e.g. Exhibits 1F-11F" and "See e.g. Exhibits 12F-20F"), the ALJ provided an extensive five-page summary of the medical evidence wherein he summarized the medical records concerning Petitioner's physical and mental functional capacity. (AR 21-26). Each of the records the ALJ considered are referenced in the broad citations to the medical records and reflected in his analysis. The Court can clearly discern the ALJ's path based upon his prior discussion of the medical record. *See Molina*, 674 F.3d at 1113; *see also Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir. 1985) (acknowledging that although it would be "more helpful," for an ALJ to lay out his determinations and supporting reasoning in the "conclusion" or "findings" section, rather than the "discussion" section, it is nothing more than a "needless formality" because the ALJ's decision is to be "examine[d] … as a whole").

In concluding that the ALJ's decision is supported by substantial evidence, the Court does not base its conclusion on post hoc rationalizations, *see Debbie P. v. Kijakazi*, No. 1:20-CV-00469-CWD, 2022 WL 225054, at *2 (D. Idaho Jan. 25, 2022) (citing *Garrison*, 759 F.3d at 1010), but upon a thorough review of the record, *see Garrison*, 759 F.3d at 1009, and "specific and legitimate inferences," *see Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion.").

**MEMORANDUM DECISION AND ORDER –** 20

Petitioner also asserts that the state agency consultants' opinions were "derived from a different set of facts" than Dr. Gage's opinion because Dr. Gage began treating Petitioner three months after Dr. Barsukov issued his opinion, and they did not have the benefit of reviewing Dr. Gage's notes or the neuropsychological examination results. (Dkt. 12 at 8). The Court finds this argument unavailing. Although Petitioner is correct that the state agency psychologists did not review Dr. Gage's report, it is evident from the ALJ's decision that the ALJ "reviewed the entire record and concluded … that the later records are consistent with the medical evidence as a whole." *Sportsman v. Colvin*, 637 F. App'x 992, 995 (9th Cir. 2016) (finding no error where the ALJ assigned greater weight to the state agency non-examining physicians' opinions even though they did not review mental health findings beyond a certain date because it was "evident that the ALJ reviewed the entire record and concluded … that the later records [were] consistent with the medical evidence as a whole"). Because substantial evidence supports the ALJ's findings, it will not be disturbed. *See Flaten*, 44 F.3d at 1457; *Verduzco*, 188 F.3d at 1089. Accordingly, the Court concludes that the ALJ did not err in evaluating the state agency medical consultants' opinions.

### ii.  Dr. Gage

Petitioner asserts that the ALJ provided no discussion regarding the consistency or supportability of Dr. Gage's opinion, but merely summarized some of Dr. Gage's treatment notes. (Dkt. 12 at 8). Respondent asserts, however, that because the ALJ correctly concluded that the ALJ did not offer a medical opinion regarding Petitioner's functioning, he was not required to provide analysis of it. (Dkt. 16 at 11-12).

**MEMORANDUM DECISION AND ORDER – 21**

The new regulations define a medical opinion as a "a statement from a medical source about what [Petitioner] can still do despite [his or her] impairment(s) and whether [he or she] ha[s] one or more impairment-related limitations or restrictions." 20 C.F.R. § 404.1513(a)(2). For a claimant, like Petitioner, who has a mental impairment, the medical opinion should assess Petitioner's "ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting." *Id.* § 404.1513(a)(2)(ii).

The ALJ is not expressly required to evaluate "objective medical evidence" or "other medical evidence" under the persuasiveness factors in 20 C.F.R. § 404.1520c. *Nancy May J. v. Kijakazi*, No. 2:20-cv-00486-CWD, 2022 WL 684372, at *4 (D. Idaho Mar. 8, 2022). Instead, "judgments about 'the nature and severity of [a claimant's] impairments, [ ] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis' are all considered 'other medical evidence' under the regulations, not medical opinions because they do not provide perspectives about the claimant's functional limitations and abilities." *Id.* (quoting 20 C.F.R. § 416.913(a)(3)); *see also* 20 C.F.R. § 404.1513(a)(3).

Dr. Gage's June 11, 2020, opinion letter indicates that Petitioner suffered a traumatic brain injury (TBI) on August 19, 2018. (AR 1098). Dr. Gage noted that he has been treating Petitioner since September 26, 2019, for post-traumatic stress disorder (PTSD) and TBI, noting that Petitioner "has made tremendous strides with his PTSD symptoms and abstinence from alcohol use which was greatly exacerbated by his TBI

**MEMORANDUM DECISION AND ORDER –** 22

and PTSD. (AR 1098). Dr. Gage then indicated that Petitioner continued "to work at his family's ranch with leniency, accommodations, and support from his mother and stepfather," and that it was his opinion that "it is more likely than not that [Petitioner] would not have been able to maintain solid employment without this assistance from family up until recently." (AR 1098). Finally, Dr. Gage outlined a plan for Petitioner, noting that he would be completing some neuropsychological testing over the summer and would continue to abstain from alcohol, and indicating that he is hopeful Petitioner will be able to look outside the family ranch for employment. (AR 1098).

Having carefully reviewed Dr. Gage's opinion letter dated June 11, 2020, the Court finds that it does not qualify as a "medical opinion" under the new regulations. The ALJ therefore was not required to evaluate the report under the persuasiveness factors contained in 20 C.F.R. § 404.1520c. As the ALJ properly noted, Dr. Gage's letter does "not provide any opinion regarding specific functional limitations of the claimant nor did he specify the functional limitations associated with the claimant's noted anxiety and irritability." (AR 28). Instead, Dr. Gage's letter constitutes an opinion regarding Petitioner's ability to work, which is a determination reserved to the Commissioner. *See* 20 C.F.R. § 404.1520b(c)(3)(i). While the ALJ was not required to provide any analysis of that statement, *id.*, it was not error for the ALJ to conclude that it was "unpersuasive with respect to the assessment of the claimant's residual functional capacity," (AR 28). Accordingly, the ALJ did not err in his evaluation of Dr. Gage's June 2020 opinion letter.

### 3. Lay Witness Testimony

Petitioner asserts that the ALJ failed to provide any analysis or explanation how

**MEMORANDUM DECISION AND ORDER –** 23

the lay witness statements impacted his determination. (Dkt. 12 at 12). Respondent asserts that the ALJ properly considered such testimony by expressly stating that he considered these statements when assessing Petitioner's symptoms and residual functional capacity and by discussing these statements throughout his decision. (Dkt. 16 at 14-15).

The record contains five letters from family and friends. First, Petitioner's mother completed a function report dated January 7, 2019, (AR 220-26), indicating that at the time, Petitioner struggled with mobility issues related to his fractured vertebrae and broken collarbone and that his memory and cognitive issues interfered with his ability to handle money and were complicated by pain. (AR 222, 223). She also wrote a detailed letter eighteen months after Petitioner's accident detailing Petitioner's physical and mental difficulties in recovering from his accident. (AR 274-76). She noted that Petitioner required supervision in all areas of life, needed reminders to feed the animals, and responded to stress by isolating himself. Petitioner's mother also testified at the hearing that Petitioner failed to complete a familiar job of cleaning up weeds around the horse arena. (AR 75, 77).

Petitioner's stepfather wrote a letter noting that Petitioner was easily distracted and needed reminders to complete tasks he formerly supervised in others, such as shutting gates or turning off the water. (AR 271).

Petitioner's sister-in-law submitted a letter recounting an instance in February 2020 where Petitioner was unable to help her husband haul cattle to Arizona. (AR 272). She testified, "As it got closer to the time they were leaving, [Petitioner] deteriorated in

**MEMORANDUM DECISION AND ORDER – 24**

front of us. He was anxious wringing his hands, and pacing; he became agitated and

eventually had a complete collapse and was unable to go at all." (AR 272).

Two family friends also submitted letters. The first indicated that Petitioner was

unable to complete basic chores, such as filling water troughs, turning off the water, and

cleaning stalls. (AR 273). The second witnessed Petitioner "withdraw from crowds" at a

wedding he attended and noted "how loud scenes terrorize his mind and multiple tasks

were no longer easily done and constant reminders are needed." (AR 277).

### a.  Legal Standard

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ

must take into account, unless he or she expressly determines to disregard such testimony

and gives reasons germane to each witness for doing so." *Diedrich v. Berryhill*, 874 F.3d

634, 640 (9th Cir. 2017) (quoting *Lewis*, 236 F.3d at 511). The revised regulations

adjusted the requirements for an ALJ's consideration of nonmedical evidence such as lay

witness statements. Under the plain language of the regulations, the ALJ must consider

lay witness statements: "In evaluating the intensity and persistence" of symptoms, the

ALJ "consider[s] all of the available evidence," including that from "medical sources and

nonmedical sources about how [a claimant's] symptoms affect [him]." 20 C.F.R.

§ 404.1529(c)(1); *see also* SSR 16-3p (requiring ALJs to consider other evidence such as

other non-medical sources to evaluate symptoms). However, 20 C.F.R. § 404.1520c(d),

specifies that the ALJ is not required to articulate how he or she considered evidence

from nonmedical sources "using the requirements in subparagraphs (a) – (c)," applicable

to evaluations of medical opinions.

**MEMORANDUM DECISION AND ORDER – 25**

Rather, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he [or she] must give reasons that are germane to each witness." *Dodrill*, 12 F.3d at 919. When rejecting third party statements that are similar in nature to Petitioner's statements, the ALJ may cite the same reasons used by the ALJ in rejecting Petitioner's statement. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

### b. Analysis

Petitioner asserts that the ALJ failed to provide any analysis or explanation how the lay witness statements impacted his determination, specifically pertaining to how each of the lay witnesses "witnessed firsthand the difficulties that [Petitioner] faced with completing projects that were previously second nature to him such as caring for his livestock and maintaining the ranch grounds." (Dkt. 12 at 12). However, the ALJ's decision indicates that he expressly considered the lay witness statements in his decision:

> The undersigned also considered the various third party statements submitted by the claimant's mother (Bobbie brown [sic] who also testified), Ted Brown (stepfather), Kimber Beers (sister in law), Linda Tiffany (friend), and Stephanie Dennis (friend). The claimant's mother also testified at the hearing and submitted third party statements. While they are not medically acceptable sources whose opinions must be evaluated for persuasiveness, the undersigned considered their statements when assessing the claimant's symptoms and residual functional capacity. (Exhibits 15E; 16E; 17E; 18E; 19E; Hearing testimony).

(AR 27). This is evinced by the ALJ's numerous references to the statements of Petitioner's "friends and family" throughout the decision, (AR 20, 21, 26, 27, 28), and specific citations to each of the letters these witnesses submitted on Petitioner's behalf,

**MEMORANDUM DECISION AND ORDER** – 26

(AR 20-21). Further, it appears that the ALJ incorporated much of the lay witnesses' statements into his ultimate determination and RFC assessment when he determined that Petitioner "is unable to perform any past relevant work" but would be "limited to work that has no more than a moderate noise level," "consists of simple, routine tasks," and "has no more than simple work related decision making as part of the job." (AR 19, 30). The ALJ also clearly considered these statements when he determined that Petitioner could "tolerate no more than occasional changes in the work setting," "no more than occasional use of public transportation or travel to unfamiliar places," and is "limited to no more than occasional interaction with the public and coworkers." (AR 19).

Finally, the ALJ was required to "give reasons germane to each witness" only if he chose to "discount" the testimony of those witnesses. *Dodrill*, 12 F.3d at 919. The ALJ did that here when he evaluated Petitioner's subjective symptom testimony. (AR 25-26). Specifically, the ALJ discounted statements of friends and family members pertaining to Petitioner's judgement impairment, (AR 20) ("Statements of friends and family indicated the claimant had difficulty concentrating, he was easily distracted, and he could not always tell when tasks are completed."); (AR 21) (noting Petitioner's mother reported he had to be "supervised at all times" and "did not realize tasks had not been completed as required" (citing AR 73-78, 205-216, 220-227, 245-251, 271-277)), based upon results of mental status examinations indicating that Petitioner "returned to normal function" with "continued deficits in insight and judgment" and based upon Petitioner's ability to "return to activities that required some skills and physical abilities," (AR 25-26). As above, while the ALJ did not expressly cite to these portions of the record in any of the conclusion

**MEMORANDUM DECISION AND ORDER – 27**

sections of his decision, the Court can easily ascertain the ALJ's line of reasoning to determine which testimony the ALJ discounted. *See Molina*, 674 F.3d at 1113.

Upon consideration of the entire record, the Court finds that the ALJ properly considered the lay witness statements in formulating his decision. The ALJ provided a robust discussion of the lay witness testimony, gave reasons for discounting certain lay witness testimony, and clearly incorporated much of the lay witness testimony into his RFC assessment. To the extent the evidence could be interpreted differently, or there are conflicts or ambiguities in the evidence, those matters are resolved by the ALJ. *Morgan.*, 169 F.3d at 599-600. The Court must uphold the ALJ's conclusion where, as here, the evidence is subject to more than one rational interpretation and the ALJ's decision is supported by substantial evidence. *Burch*, 400 F.3d at 679.

### 4.  Residual Functional Capacity Assessment

#### a.  Legal Standard

A claimant's residual functional capacity ("RFC") is his or her ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. § 404.1545. Essentially, it is the most the claimant can do despite his or her limitations. *Id.* In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *See* SSR 96–8p; 20 C.F.R. § 404.1545(a)(3). The ALJ is required to consider all of the limitations imposed by the claimant's impairments, even those that are not severe. SSR 96–8p. The RFC assessment is used to determine first,

**MEMORANDUM DECISION AND ORDER – 28**

whether the claimant can do their past relevant work and, second, whether the claimant can adjust to any other work that exists in the national economy. 20 C.F.R. § 404.1545(a)(5).

### b.  Analysis

Petitioner asserts that the ALJ erred when he failed to include all of Petitioner's functional limitations in the RFC. (Dkt. 12 at 16). As discussed at length above, the ALJ properly disregarded Petitioner's subjective symptom testimony because it was inconsistent with the medical evidence and the other evidence in the record. Additionally, the ALJ properly evaluated the medical evidence and appropriately considered the lay witness testimony. Because the Court finds that the ALJ's decision was without error, the RFC assessment is not flawed. Accordingly, the ALJ's decision will stand.

### <u>ORDER</u>

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) The Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED**.

2) The Petition for Review (Dkt. 1) is **DISMISSED.**

DATED: July 26, 2022

_____
Honorable Debora K. Grasham
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER – 29**